# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 21, 2010        Decided April 19, 2011

No. 09-5402

ED BRAYTON,
APPELLANT

v.

OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00855)

*Adina H. Rosenbaum* argued the cause for appellant. With her on the briefs was *Scott L. Nelson*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Ed Brayton filed suit under the Freedom of Information Act seeking disclosure of a classified international trade agreement. While the case was pending before the district court, the United States Trade Representative declassified and released the agreement to the public. The question before us is whether Brayton is entitled to recover attorney fees for his lawsuit. The district court determined he was not because the government was justified in withholding the document as a matter of law. We agree and affirm.

I

On December 17, 2007, during negotiations under the auspices of the World Trade Organization, the United States and the European Union signed a joint agreement outlining various trade concessions the U.S. would make to offset the costs imposed by its policy restricting access to Internet gambling. Two days later, Ed Brayton filed a FOIA request with the United States Trade Representative (USTR) seeking disclosure of the agreement. Although the Freedom of Information Act generally provides that government agencies "shall make available to the public" certain information upon request, 5 U.S.C. § 552(a), the Act expressly exempts the disclosure of information that is "properly classified," *id.* § 552(b)(1). In January 2008, USTR denied Brayton's request on the ground that the agreement he sought was classified pending completion of the ongoing trade negotiations.

Two months later, the Freedom of Information Appeals Committee within USTR affirmed the agency's decision to withhold the document. *See* Letter from Mark Linscott, Chair, Freedom of Info. Appeals Comm., to Ed Brayton (Mar. 25,

2008). The Committee determined that the document had been properly classified pursuant to Executive Order 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995), as amended by paragraph 1.4(b) of Executive Order 13,292, which provides that "foreign government information" may be treated as "classified national security information." 68 Fed. Reg. 15,315, 15,315, 15,317 (Mar. 25, 2003). Executive Order 13,292 paragraph 6.1(r) defines "foreign government information" to include "information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence." *Id.* at 15,331.[*] The agreement Brayton sought was the product of negotiations conducted under WTO rules requiring agreements to be held in confidence until negotiations conclude. *See* General Council, *Procedures for the Circulation and Derestriction of WTO Documents*, WT/L/452 (May 16, 2002).

In May 2008, Brayton filed a complaint in federal district court seeking an order disclosing the agreement on the ground that it was not properly classified. After he moved for summary judgment, USTR explained to the court that the case might soon become moot because:

> [A] representative of the European Community ("EC") contacted USTR staff about the possibility of releasing the document publically in the future. Although USTR believes that a unilateral release would be inconsistent with WTO obligations, the agency is exploring the

---

[*] Executive Order 12,958 and all amendments thereto have since been superseded by Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).

4

possibility of de-restricting the document with representatives of the EC. If, based on the mutual request of the EC and the United States, the WTO does de-restrict the document, USTR will promptly de-classify it, make it publically available, and send a courtesy copy to Plaintiff.

Def's Consent Mot. to Enlarge Time to File Reply in Supp. Of Mot. for S.J. 2.

After the parties filed cross motions for summary judgment but before the district court issued a decision, the Europeans agreed to release the trade agreement, which USTR declassified and sent to Brayton. Brayton then moved for attorney fees on the ground that he had "substantially prevailed," 5 U.S.C. § 552(a)(4)(E)(i), in his FOIA lawsuit.

The district court denied Brayton's motion, following the two-step analysis described in *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476 (D.C. Cir. 1984). First, in order to be "eligible" for fees, a plaintiff must have "substantially prevailed" on his FOIA claim. *Id.* at 1495. Second, the plaintiff must show that he is "entitled" to fees based on a combination of factors, including the reasonableness of the government's initial refusal to disclose the requested information. *Id.* at 1498. Applying this framework, the court held that even if Brayton had substantially prevailed under his FOIA request and was thus "eligible" for fees, he was not "entitled" to them "because the defendant's decision to withhold the Agreement was correct as a matter of law." *Brayton v. Office of U.S. Trade Representative*, 657 F. Supp. 2d 138, 145 (2009).

On appeal, Brayton does not dispute the district court's holding that USTR was correct as a matter of law to withhold

the agreement he requested, but he claims the court still should have considered awarding him fees because his claim for disclosure was "not insubstantial." The statute provides that a complainant "may" recover attorney fees if his "claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E). But the district court held that a plaintiff may *not* receive attorney fees if his claim is incorrect as a matter of law. Thus, according to Brayton, "[p]laintiffs will *never* receive fees if their claims are not insubstantial unless the defendants' decision to withhold the documents also was incorrect on the merits." Appellant's Br. 13. Brayton argues that this result conflicts with the statutory text, which requires only that a plaintiff's claim be "not insubstantial."

We have jurisdiction over this appeal under 28 U.S.C. § 1291, and we review the district court's refusal to award attorney fees for abuse of discretion. *See Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008). A "district court abuses its discretion if it did not apply the correct legal standard . . . or if it misapprehended the underlying substantive law." *Kickapoo Tribe v. Babbit*, 43 F.3d 1491, 1497 (D.C. Cir. 1995) (internal quotation marks omitted). We examine *de novo* whether the district court applied the correct legal standard. *See FTC v. H.J. Heinz Co.*, 246 F.3d 708, 713 (D.C. Cir. 2001).

II

A

The Freedom of Information Act provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). This language naturally divides the attorney-fee inquiry into two prongs,

which our case law has long described as fee "eligibility" and fee "entitlement." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368-69 (D.C. Cir. 2006). The eligibility prong asks whether a plaintiff has "substantially prevailed" and thus "may" receive fees. *Id.* at 368. If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees. *Id.* at 369.

Over the last decade, the law of FOIA fee awards has been in considerable flux. Before 2001, the D.C. Circuit construed fee eligibility broadly under what was known as the "catalyst theory." Under this doctrine, a plaintiff "substantially prevailed" not only when he obtained an official disclosure order from a court, but also when he substantially caused the government to release the requested documents before final judgment. *See generally Summers v. Dep't of Justice*, 569 F.3d 500, 502 (D.C. Cir. 2009) (describing the operation of the old catalyst theory).

If a plaintiff substantially prevailed and was thus "eligible" for fees, the court would then consider several factors to determine whether the plaintiff was "entitled" to fees, including whether the government's initial decision to withhold the requested documents was reasonable. *See Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093-94 (D.C. Cir. 1992). If the government's initial decision to withhold was clearly justified, that was the end of the analysis. As one case put it, "a party is not entitled to fees if the Government's legal basis for withholding requested records is correct." *Chesapeake Bay Found. v. USDA*, 11 F.3d 211, 216 (D.C. Cir. 1993).

In 2001, the Supreme Court held that plaintiffs generally would only be eligible for attorney fees if they were "awarded

some relief by [a] court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). In 2002, we confirmed that *Buckhannon* applied to FOIA cases, holding that "in order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court.'" *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 456-57 (D.C. Cir. 2002) (alteration in original) (quoting *Buckhannon*, 532 U.S. at 603).

The strict *Buckhannon* rule drew some criticism for allowing the government to stonewall valid FOIA claims but prevent an award of attorney fees by disclosing the documents at the last moment before judgment. An agency could simply refuse a FOIA request, wait for a lawsuit to be filed, drag its heels through the litigation process, and then release the requested documents at the last moment if the plaintiff appeared likely to win a judgment. Agencies could force FOIA plaintiffs to incur litigation costs while simultaneously ensuring that they could never obtain the merits judgment they needed to become eligible for attorney fees. To address this problem, Congress passed the OPEN Government Act of 2007, Pub. L. No. 110-175, which abrogated the rule of *Buckhannon* in the FOIA context and revived the possibility of FOIA fee awards in the absence of a court decree. The Act redefined "substantially prevail[ing]" to include "obtain[ing] relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

The purpose and effect of this law, which remains in effect today, was to change the "eligibility" prong back to its pre-*Buckhannon* form. The result is that plaintiffs can now qualify as "substantially prevail[ing]," and thus become eligible for attorney fees, without winning court-ordered relief

on the merits of their FOIA claims. *See Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010) ("Disapproving of the effect [*Buckhannon* and its progeny] had on the disclosure policies of administrative agencies, Congress enacted the OPEN Government Act of 2007 to establish that the catalyst theory applied in FOIA cases."). Yet despite this shift in the standard for fee eligibility, the OPEN Government Act did not have any effect on the standard for fee entitlement, which has remained essentially unchanged since the days of the catalyst theory. For purposes of fee entitlement, the rule remains that if the government was "correct as a matter of law" to refuse a FOIA request, "that will be dispositive." *Davy*, 550 F.3d at 1162 (quoting *Chesapeake Bay Found.*, 11 F.3d at 216). Plaintiffs who sue to force disclosure in such circumstances are not entitled to attorney fees.

B

Brayton's argument relies chiefly on the statute's provision that courts "may" award fees to plaintiffs whose FOIA claims are "not insubstantial." He observes that the district court's approach prevents plaintiffs with "not insubstantial" claims from receiving fees if the government was correct as a matter of law to withhold the requested documents. He argues that this effectively nullifies the statute's lenient "not insubstantial" standard, replacing it with the stricter requirement that a plaintiff's claim be correct on the merits to qualify for an award.

The problem with Brayton's argument is that the fee-entitlement rule that the district court applied *does* leave room for fee awards in some cases where a plaintiff has a "not insubstantial" claim that falls short on the merits. Under the district court's rule, fees are only barred where the government can demonstrate that its basis for nondisclosure

was "correct as a matter of law." *Davy*, 550 F.3d at 1162. This requires the government to satisfy the summary judgment standard by showing that there are no genuine issues of material fact in dispute and that the government was justified as a matter of law in refusing the plaintiff's FOIA request. If the government cannot carry this burden, a substantially prevailing FOIA plaintiff may receive fee awards as long as his claim was "not insubstantial."

FOIA provides only that attorney fees "may" be awarded to a substantially prevailing plaintiff. Rather than exercising its discretion in an ad hoc and potentially inconsistent fashion, the district court adhered to our circuit's long-established rule of never granting a fee award to a plaintiff whose FOIA claim was incorrect as a matter of law. Of course, this rule means that a particular subset of substantially prevailing plaintiffs will never receive fees, but this is an inevitable consequence of following any rule at all. The rule in this case does not undermine the discretion granted by Congress but simply ensures that like cases will be treated alike—a necessary condition for "avoid[ing] an arbitrary discretion in the courts." *Missouri v. Jenkins*, 515 U.S. 70, 129 (1995) (Thomas, J., concurring) (quoting THE FEDERALIST NO. 78, at 529 (J. Cooke ed. 1961) (Alexander Hamilton)).

Brayton urges that fee awards should not be foreclosed despite the fact that the government was correct as a matter of law to withhold the documents he requested. This interpretation would make the law of FOIA fee entitlement even more favorable to plaintiffs than it was before *Buckhannon*. Brayton claims that the legislative history of the OPEN Government Act bolsters his case, but if anything the history only suggests that Congress intended to reinstate the pre-*Buckhannon* rule for fee eligibility. *See* S. Rep. No. 110-59, at 4 (2007) ("The bill clarifies that *Buckhannon* does not

apply to FOIA cases."); *id.* at 6 (amendment to attorney's fee provision is "the so-called *Buckhannon* fix"); *id.* ("This section clarifies that *Buckhannon's* holding does not and should not apply to FOIA litigation."); *id.* at 14 (Additional Views of Sen. Kyl) ("the bill legislatively overrules the U.S. Supreme Court's decision in *Buckhannon* . . . as that decision applies to FOIA"); *id.* at 20 (Justice Department's Views Letter) ("We understand this provision's intent to be the overruling of the Supreme Court's decision in *Buckhannon* . . . and of a number of recent court of appeals decisions that have applied *Buckhannon* to reject the catalyst theory as a basis for FOIA attorneys' fee awards."); H.R. Rep. No. 110-45, at 4 (2007) (bill "clarif[ies] that *Buckhannon* does not apply to FOIA cases"); *id.* at 6 ("This section makes clear that the *Buckhannon* decision does not apply to FOIA cases and ensures that requesters are eligible for attorney fees and other litigation costs if they obtain relief from the agency during the litigation."); 153 CONG. REC. S10987 (daily ed. Aug. 3, 2007) (Sen. Leahy) ("The bill clarifies that *Buckhannon* does not apply to FOIA cases.").

Brayton points to a floor statement Senator Kyl made shortly before the passage of the Act, which he co-sponsored. The Senator stated that the Act would abrogate *Buckhannon* in FOIA cases and allow courts to award attorney fees to a substantially prevailing plaintiff with a "not insubstantial" claim. He acknowledged that this "is a pretty low standard [that] would allow the requester to be deemed a prevailing party for fee-assessment purposes even if the government's litigating position was entirely reasonable—or even if the government's arguments were meritorious and the government would have won had the case been litigated to a judgment." 153 CONG. REC. S10989 (daily ed. Aug. 3, 2007).

Even if the meaning of a law could depend on the unratified words of a single lawmaker, this statement would provide scant support for Brayton's argument. Senator Kyl registered his understanding that the Act would allow *some* plaintiffs with losing FOIA claims to receive attorney fees, not all such plaintiffs. As discussed above, the district court's ruling is consistent with this outcome, inasmuch as it permits fee awards where the government, while ultimately correct, cannot show that its position is correct "as a matter of law" under the summary judgment standard. If a court finds that there were genuine issues of material fact in dispute before the case settled, the court may still award fees as long as the plaintiff has substantially prevailed on the basis of a claim that was "not insubstantial."

Although the vast majority of FOIA cases can be resolved on summary judgment, which means that in most cases finding the government's position "correct as a matter of law" is the same as finding it "correct," this is not always the case. In fact, there was a FOIA trial in our jurisdiction as recently as 2009. *See In Def. of Animals v. U.S. Dep't of Agric.*, 656 F. Supp. 2d 68 (D.D.C. 2009). That case involved a FOIA plaintiff seeking government records of an investigation into a research facility's alleged violations of the Animal Welfare Act. The research facility intervened and opposed disclosure primarily under FOIA's exemption for confidential commercial information. In explaining why the case could not be disposed of on summary judgment, the court stated the need for a trial to probe disputed factual questions involving "whether disclosure of the categories of information in the context of the documents sought by IDA would permit [the research facility's] competitors to derive or reverse engineer [the research facility's] proprietary information, thereby causing it substantial competitive harm." *In Def. of Animals v. U.S. Dep't of Agric.*, 501 F. Supp. 2d 1,

6 (D.D.C. 2007). The opinion relied on two of our FOIA cases in which we held summary judgment would be inappropriate because genuine issues of material fact existed as to the applicability of a FOIA exemption. *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy,* 169 F.3d 16 (D.C. Cir. 1999); *Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 865 F.2d 320 (D.C. Cir. 1989). Although such cases are rare, our doctrine must nonetheless take them into account. If the government settles a FOIA case that would have turned on disputed issues of material fact, the district court facing a request for attorney fees may not know whether the plaintiff's claims were meritorious. It should not be obligated to hold a full trial to find out.

Brayton argues that applying the summary judgment standard to evaluate the government's nondisclosure decisions will open the floodgates by transforming every motion for attorney fees into a mini-trial on the merits of the underlying FOIA claim. But the fee-entitlement rule the district court applied in this case has been in place for quite some time, even before *Buckhannon*, and the federal judiciary has yet to be deluged. By relying on the summary judgment standard, the rule preserves the discretion of courts in fee determinations to avoid the swamp of merits adjudication whenever material facts are in dispute.

It is undeniable that considering the merits of an agency's nondisclosure decision will frequently complicate the adjudication of motions for attorney fees. But on the other side of the ledger is the concern that courts should not dole out fee awards to plaintiffs who bring FOIA lawsuits that cannot survive a motion for summary judgment. We resolved this tension long ago when we stated that "there can be no doubt that a party is not entitled to fees if the Government's

legal basis for withholding requested records is correct." *Chesapeake Bay Found.*, 11 F.3d at 216.

In closing, we note the irony that awarding fees to plaintiffs in Brayton's situation might prod government agencies to be less rather than more transparent. In this case, USTR was under no obligation to declassify the document and release it to the public as quickly as it did. Instead, it could have delayed the process and withheld the documents much longer, and its decision still would have remained correct as a matter of law. Under the rule applied by the district court, agencies in USTR's position can choose to relent for the sake of transparency and release requested documents without exposing themselves to monetary penalties: the fact that their initial nondisclosure decision rested on a solid legal basis creates a safe harbor against the assessment of attorney fees. Under Brayton's approach, however, agencies with legal authority to withhold requested documents would have no such safe harbor. Thus they might hesitate to release the documents, since doing so would risk creating a "substantially prevail[ing]" plaintiff who might be entitled to fees.

## III

For the foregoing reasons, the district court's judgment is

*Affirmed.*