# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30296

RAFAEL ELLWANGER DASILVA,

Plaintiff - Appellant

v.

UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2014

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-13

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

WIENER, Circuit Judge:*

Plaintiff-Appellant Rafael Ellwanger DaSilva seeks attorneys fees from United States Citizenship and Immigration Services ("USCIS") under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, for litigation involving the provision of a permanent resident card ("PRC"). He also seeks attorneys fees under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), for a separate action to obtain documents pertaining to his immigration status.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30296

The district court denied DaSilva's EAJA fee request and awarded him $4,170 on his FOIA fee request, a substantial reduction from his requested fee of $45,282.50. Concluding there was no abuse of discretion by the district court, we affirm.

## I.    FACTS AND PROCEEDINGS

DaSilva seeks attorneys fees for the efforts of counsel Michael Gahagan ("Counsel") in obtaining documents related to DaSilva's application for permanent residency. DaSilva, a Brazilian citizen, lawfully entered the United States on a tourist visa in 2006 and later married an American citizen.[1]  He was granted permanent resident status by an immigration judge on December 18, 2012. Although Counsel also represented DaSilva on his permanent residency application, this case primarily deals with events occurring *after* DaSilva's residency was approved.

### A.    DaSilva's FOIA Request

While his immigration case was pending, DaSilva sought access via FOIA to his Alien File ("A-File"), USCIS's complete collection of documents pertaining to his presence in the United States. DaSilva planned to use his A-File to support his permanent residency claim. His FOIA request, filed on December 3, 2012, asked for "any and all documents, forms, or other written, photographic, electronic, computer generated, or recorded materials relating to Mr. Dasilva in the possession of the Department of Homeland Security." In addition, DaSilva requested "copies of all written or electronic correspondence or communication, including, but not limited to, any email correspondence sent to or received by [the several USCIS employees who had worked on DaSilva's residency application] regarding Mr. Dasilva."

---

[1] *See DaSilva v. U.S. Att'y Gen.*, Nos. 12-538 & 12-807, 2012 WL 5289387, at *1–2 (E.D. La. Oct. 24, 2012).

No. 14-30296

The USCIS department in charge of processing DaSilva's FOIA request received his filing and sent him a letter that included a tracking number. On January 3, 2013, DaSilva filed a complaint against USCIS in federal district court for a violation of FOIA's statutory twenty-day response period.[2]

USCIS located 1,387 pages of documents responsive to DaSilva's FOIA request and disclosed the vast majority of them on February 12, 2013.[3] The government submitted an affidavit to the district court essentially declaring that the FOIA records search was complete. This initial disclosure (the "first set of documents"), however, was responsive only to DaSilva's request for his A-File, not his request for all pertinent "written or electronic correspondence." USCIS apparently missed that second request and, critically, realized its mistake on April 3, 2013, but did not inform the district court until May 7. During this intervening time period, the government continued to maintain that it had completely fulfilled its obligations under FOIA. Finally, on May 20, 2013, an additional 1,071 pages of emails from the relevant USCIS employees' email accounts were found and disclosed (the "second set of documents").

**B.    Replacing DaSilva's Permanent Resident Card**

After DaSilva's application for permanent residency was granted by an immigration judge on December 18, 2012, he was sent a PRC to evidence his new status. The mail carrier responsible for his address swore to having delivered it, and the Priority Mail tracking number on the package substantiated her declaration, but DaSilva insists that he never received the card. Counsel asked USCIS to furnish another card, and USCIS instructed

---

[2] The complaint also alleged violations of the Fifth Amendment Due Process Clause and the Immigration and Nationality Act for USCIS's failure to provide DaSilva with his A-File. Both claims were later dismissed.

[3] As of January 3, the estimated processing time for a FOIA request for A-File materials of DaSilva's priority level was 27 days. Processing time for non-A-File materials, such as email communications not included in the A-File, was 109 days.

him to have DaSilva file a Form I-90. This was the official procedure for requesting a replacement PRC. In the meantime, USCIS placed a permanent resident stamp in DaSilva's passport so that he would have proof of status.

On January 26, 2013, DaSilva amended his complaint to include causes of action under the Immigration and Nationality Act and Administrative Procedures Act for USCIS's "unlawful refusal to issue" him a PRC. The amended complaint alleged that USCIS "acted in bad faith in refusing to issue" the PRC and that DaSilva lacked an "adequate alternative remedy." The complaint failed to mention, however, that a card had already been issued and lost, or that DaSilva had been advised to file a Form I-90. The PRC issue was resolved at a status conference on March 14, 2013, after which the district court ordered DaSilva to complete the Form I-90 by the following day and ordered the government to furnish DaSilva with a PRC within seven days after receiving that form ("PRC Order"). The parties complied with these instructions.

### C.    DaSilva's Requests for Attorneys Fees

After the FOIA and PRC issues were resolved, DaSilva timely filed two motions for attorneys fees pursuant to FOIA and the EAJA respectively. In these motions, he requested $45,282.50 in attorneys fees (plus $793.94 in costs) for the FOIA litigation and $18,998 in attorneys fees (plus $432.04 in costs) for the PRC litigation. The district court denied his EAJA motion, and DaSilva appealed.

Adjudication of the FOIA fee request was significantly more complex. In an order filed on February 24, 2014 ("FOIA Order I"), the district court ruled that DaSilva was eligible for and entitled to fees for Counsel's hours litigating the production of the second set of documents, but not the first set. It ordered DaSilva to file a revised timesheet that contained only hours related to the second set. The court also expressed concern that several timesheet entries

No. 14-30296

appeared entirely unrelated to DaSilva's FOIA claim, and it reduced Counsel's hourly rate to $200 per hour from $295.[4]  DaSilva appealed.

On March 9, 2014, DaSilva filed his second motion for fees, attaching a revised timesheet.  When USCIS failed to file an opposition, the district court's law clerk, following routine chambers practice, called USCIS's counsel to inquire if a response would be forthcoming.  USCIS immediately requested leave to file an untimely response, which the district court granted over DaSilva's vehement objections.  DaSilva appealed that order.  Finally, in an order filed on May 7, 2014 ("FOIA Order II"), the district court awarded DaSilva $4,170 in attorneys fees.  Again, DaSilva appealed.

## II.   ANALYSIS

### A.   EAJA Fees

We review a district court's decision on attorneys fees under the EAJA for abuse of discretion.[5]  This standard is highly deferential to the district court's findings of fact.  We review conclusions of law *de novo*.

The EAJA allows a party who prevails in litigation against the government to recover attorneys fees.[6]  Under § 2412(d) of the EAJA, the district court "shall award to a prevailing party other than the United States fees and other expenses . . . unless [it] finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[7]  A prevailing party is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit."[8]  To

---

[4] The court also awarded DaSilva the full $793.94 requested for costs.

[5] *Murkeldove v. Astrue*, 635 F.3d 784, 789 (5th Cir. 2011).

[6] *See* 28 U.S.C. § 2412 (2013).

[7] *Id.* § 2412(d)(1)(A).

[8] *Sims v. Apfel*, 238 F.3d 597, 600 (5th Cir. 2001) (per curiam) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (internal quotation mark omitted).  We have said that a plaintiff "must (1) obtain actual relief, such as an enforceable judgment or a consent decree;

be substantially justified is to be "justified to a degree that could satisfy a reasonable person."[9]  We do not, however, hold the government to an "overly stringent" standard.[10]  Although the government's position—its litigation position *and* the underlying agency action that prompted the litigation—must be reasonable in both law and fact, it may justify its position merely by showing that there was a "genuine dispute" or that "reasonable people could differ" as to the agency action.[11]  Furthermore, the district court may deny a request under § 2412(d) if special circumstances would make an award unjust.[12]  Finally, even if a party qualifies for a fee award under the EAJA, the district court retains the discretion to reduce the award or eliminate it altogether if the prevailing party "engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy."[13]

DaSilva seeks EAJA attorneys fees for Counsel's work to secure him a PRC.  The district court denied DaSilva's motion, finding that (1) DaSilva was not a prevailing party, and (2) USCIS's position was substantially justified.[14]  On appeal, DaSilva advances substantially the same arguments as he did in

---

(2) that materially alters the relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite, TX*, 313 F.3d 246, 249 (5th Cir. 2002) (defining "prevailing party" under 42 U.S.C. § 1988); *see also Othman v. Chertoff*, 309 F. App'x 792, 794 (5th Cir. 2008) (per curiam) (unpublished) (EAJA case citing *Walker*).

[9] *Sims*, 238 F.3d at 602 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (internal quotation mark omitted).

[10] *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003).

[11] *Id.* (quoting *Pierce*, 487 U.S. at 565).

[12] We have stated that "the 'special circumstance' provision has two purposes: (1) it acts as a 'safety valve . . . to insure that the government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts' and (2) 'it gives courts discretion to deny awards where equitable considerations dictate an award should not be made.'" *Murkeldove v. Astrue*, 635 F.3d 784, 794–95 (5th Cir. 2011) (quoting *State of La. ex. rel. Guste v. Lee*, 853 F.2d 1219, 1224 (5th Cir. 1988)).  The question of whether equitable considerations exist is resolved by considering the totality of the circumstances of each case. *See id.* at 795.

[13] 28 U.S.C. § 2412(d)(1)(C) (2013).

[14] The district court made no ruling on special circumstances.

his initial motion.[15]  According to DaSilva, the government flatly refused to send him a PRC, in defiance of the immigration judge who granted DaSilva's permanent resident status in December 2012; and it changed its unreasonable position only by dint of the district court's PRC Order.

DaSilva's contentions are entirely without merit.  First, to the extent that he resurrects factual allegations discredited by the district court, those rulings merit great deference.  Moreover, the district court's factual finding—that the government *did* mail a PRC that went awry after delivery—is amply supported by the record.  Second, our review of the district court's legal conclusions reveals no error.  The district court correctly determined that DaSilva was not a prevailing party under the EAJA, as the government was required to do only what it had already promised.[16]  The PRC Order, on which DaSilva relies to show that he was the prevailing party, in fact instructed DaSilva to do exactly what *he* had been refusing to do and substantiated the *government's* legal position.[17]  Furthermore, as there was a genuine dispute over whether DaSilva had received his original PRC, USCIS's position that DaSilva fill out *one* form to receive a replacement PRC easily passes the reasonableness test.  We are convinced that the district court did not abuse its discretion in ruling that DaSilva was not a prevailing party under the EAJA and that the government's position was substantially justified.

---

[15] DaSilva does abandon two claims on appeal.  He had originally asked for an exemption from the EAJA's statutory cap on attorneys fees of $125 per hour and sought recovery of $432.04 in costs and expenses associated with litigating the PRC issue; as DaSilva has not briefed these issues, they are waived.  *See United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009).

[16] *See Aronov v. Napolitano*, 562 F.3d 84, 93 (1st Cir. 2009) (en banc).  The only additional duty the court placed on the government was to expedite processing of DaSilva's Form I-90 once it was received.  The district court made clear, however, that the "time constraint imposed was intended solely to facilitate efficient resolution of the litigation."

[17] At best, the PRC Order is analogous to a "remand" to an agency for further proceedings, but such a result does not confer prevailing-party status on the plaintiff.  *Cf. Sullivan v. Hudson*, 490 U.S. 877, 887 (1989).

## B.    FOIA Fees

### 1.    Applicable Law

We review a district court's determination of attorneys fees "for abuse of discretion, assessing fact findings for clear error and legal conclusions de novo."[18]  FOIA authorizes the district court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."[19]  To prevail substantially, the complainant in a FOIA action must obtain relief either by (1) "judicial order, or an enforceable written agreement or consent decree" or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."[20]  This second theory of causation requires the plaintiff to show that "prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information."[21]

When deciding whether to award attorneys fees under FOIA, the district court must conduct a two-step inquiry, asking first "whether a plaintiff has substantially prevailed" according to the statutory definition of the term ("eligibility").[22]  If the plaintiff has thus prevailed, the court then "determine[s] whether the plaintiff *should* receive fees" ("entitlement").[23]

---

[18] *Batton v. I.R.S.*, 718 F.3d 522, 525 (5th Cir. 2013).

[19] 5 U.S.C. § 552(a)(4)(E)(i) (2013).

[20] *Id.* § 552(a)(4)(E)(ii).

[21] *Batton*, 718 F.3d at 525 (quoting *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980)) (internal quotation mark omitted).

[22] *Id.* (quoting *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)).

[23] *Id.* (quoting *Brayton*, 641 F.3d at 524) (internal quotation mark omitted).  These factors are "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law."  *Id.* at 527 (quoting *Texas v. I.C.C*, 935 F.2d 728, 730 (5th Cir. 1991)).

No. 14-30296

If the district court concludes that a fee award is appropriate, it must then determine the amount of that award, again by a two-step process:

> First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[24]

The circumstances of the case and the *Johnson* factors allow either upward or downward adjustments of the lodestar.[25] This fact-intensive process is committed to the discretion of the district court,[26] which must "provide 'a reasonably specific explanation for all aspects of a fee determination.'"[27]

### 2.    *Analysis*

In two comprehensive opinions, the district court ruled that DaSilva was eligible for and entitled to fees under FOIA, but it questioned the amount requested and awarded only $4,170, less than ten percent of the initial application for $45,282.50. DaSilva makes numerous objections, which we consolidate into four groups: (1) The district court erred in awarding fees only

---

[24] *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379–80 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011) (citations omitted). The twelve *Johnson* factors are (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases. *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[25] *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999); *see also Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010) ("[A]lthough we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in 'rare' and 'exceptional' circumstances." (citation committed)).

[26] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

[27] *Jimenez*, 621 F.3d at 380 (quoting *Perdue*, 559 U.S. at 558).

for work related to the second set of documents, but not the first set; (2) the court abused its discretion in setting Counsel's hourly rate at $200; (3) the court inappropriately made percentage-based reductions to the total hours; and (4) the court should have granted fees for specific activities ancillary to the FOIA litigation, such as litigating the fee dispute and reviewing the produced documents. We consider each group of objections in turn.

First, DaSilva makes much of the district court's analytical approach, contending that the court was wrong to divide his FOIA cause of action into two parts and withhold fees as to the "judicially created first part." He fails to recognize, however, that FOIA's fee-shifting provision does not guarantee him the entirety of his fee request. Under FOIA, the district court determines if the plaintiff is eligible for and entitled to *any* fee award. The district court then determines the *amount* of the award in accordance with our general precedents on attorneys fees. As such, DaSilva's objection is more properly understood as a challenge to the *amount* of the award.[28]

Thus viewed, we find no error in the district court's rulings, as fees may be awarded only for hours reasonably expended.[29] We agree with the district court that USCIS's processing of the first set of documents did not reflect "the sort of dilatory litigation tactics that [the attorneys fees] provision was aimed to prevent."[30] We further agree that DaSilva's FOIA strategy—submitting his request on December 3, 2012, and waiting precisely the statutory minimum of twenty business days before filing his complaint on January 4, 2013—

---

[28] We also note that the district court divided its resolution of the FOIA fee application entirely because of severe errors in Counsel's initial timesheet, which prevented the court from making a fee award in FOIA Order I. This initial timesheet contained entries entirely unrelated to DaSilva's FOIA claim, such as hours associated with the PRC litigation.

[29] *See Jimenez*, 621 F.3d at 379–80; *see also Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992) (noting that we may "affirm on any grounds supported by the record").

[30] *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012).

demonstrates a "resort to the 'squeaky wheel' technique of prematurely filing suit in an effort to secure preferential treatment" that the FOIA fee-shifting scheme "was not meant to reward."[31]   DaSilva offers no evidence that his lawsuit "could reasonably be regarded as necessary" or that it "had a substantive causative effect on the delivery" of the first set of documents.[32] Without any persuasive demonstration of causality, hours expended in relation to the first set of documents are excessive.[33]  The district court did not abuse its discretion in excluding them from the fee award.

Second, DaSilva claims that $200 per hour is not an appropriate "prevailing rate" for attorneys with Counsel's level of experience. The district court's "determination of a 'reasonable hourly rate' is a finding of fact . . . reviewable under the clearly-erroneous rubric."[34]  The rate must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[35]  Here, the district court based its determination on a review of case law from the Eastern District of Louisiana and cited, as one example, a case in which an attorney with seven years of experience—the same as Counsel—was awarded $185 per hour. DaSilva urges us to rely on a single recent FOIA case in which an attorney with eight years of experience was awarded a rate of $300 per hour.[36]  But even

---

[31] *Arevalo-Franco v. I.N.S.*, 772 F. Supp. 959, 961 (W.D. Tex. 1991) (quoting *Fund for Constitutional Gov't v. Nat'l Archives*, 656 F.2d 856, 871 (D.C. Cir. 1981)).

[32] The record indicates that the government initiated a search for DaSilva's A-File before the lawsuit was filed on January 3, 2013.  Although the requested material was not released until February 12, FOIA disclosures must be reviewed for exemptions, a process which can take some time.  There is nothing to suggest that DaSilva's lawsuit had any impact on the timing of this initial disclosure.

[33] Alternatively, they could have been excluded under the *Johnson* factor that adjusts the lodestar according to "results obtained."

[34] *Islamic Ctr. of Miss. v. City of Starkville, Miss.*, 876 F.2d 465, 468 (5th Cir. 1989).

[35] *Blum v. Stenson*, 465 U.S. 886, 896 (1984).

[36] *See Hernandez v. U.S. Customs & Border Prot. Agency*, No. 10-4602, 2012 WL 398328, at *15 (E.D. La. Feb. 7, 2012).

in that case, $300 per hour appeared to be atypically high.[37]  Although it was within that court's discretion to award a high hourly rate, the district court in this case did not clearly err in staying within the middle of the range.

Third, DaSilva challenges as insufficiently detailed the district court's use of percentage-based reductions.  The district court was forced to fall back on these reductions, however, because Counsel's revised timesheet still failed to differentiate between FOIA claims and non-FOIA claims, and between hours expended in relation to the first versus the second set of documents.[38]  The district court's calculations result from Counsel's own failure to document adequately or justify his time entries, despite the court's very clear instruction to do so.  Moreover, in light of the serious concerns that the district court repeatedly expressed about Counsel's timesheets, an additional fifteen percent reduction for lack of billing judgment was not an abuse of discretion.[39]

Fourth, DaSilva contends that the district court erred in excluding some hours spent by Counsel on ancillary matters; in particular on litigating the fee dispute and reviewing documents produced pursuant to FOIA.  As to the issue of "fees on fees," the district court found that this additional fee litigation was the result of Counsel's initial failure to keep an accurate timesheet.[40]  It is within the district court's wide discretion to award or deny fees on fees, based

---

[37] *See id.* (listing nine cases, in which hourly rates for attorneys with seven or eight years of experience ranged from $180 to $240 per hour).

[38] *See Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983) (discussing the possibility of a fee reduction if the prevailing party only succeeded on some of his claims).

[39] *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("[T]he District Court faulted Plaintiffs for vagueness, duplicative work, and not indicating time written off as excessive or unproductive.  Plaintiffs unconvincingly argue that the lodestar amount should not be reduced for neglecting to list unbilled time."); *cf. Hernandez*, 2012 WL 398328, at *14 ("Additionally, the Court finds that Plaintiff's counsel have exercised reasonable billing judgment by excluding hours spent by legal assistants, and by voluntarily reducing their total request by 10%.").

[40] Counsel had a duty to file a reasonable initial fee motion.  *See Hensley*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . .").

on its evaluation of the merits of the underlying fee request.[41]  On the issue of fees for reviewing FOIA productions, there is no precedent in this court.  In light of this, and considering our deferential standard of review, the district court's decision to deny fees is not an abuse of discretion.

**3.    USCIS's Untimely Pleading**

We review a district court's grant or denial of a motion for extension of time for abuse of discretion.[42]  Federal Rule of Civil Procedure 6(b) allows the district court to grant a party's motion to file an untimely pleading on a showing of good cause and "if the party failed to act because of excusable neglect."[43]  We have said that "'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[44]  In evaluating a party's claim of excusable neglect, the district court may consider the danger of prejudice to the opposing party, the length and impact of the delay, the reason for the delay, and the moving party's good faith.[45]

The district court did not abuse its discretion by allowing USCIS to file an untimely opposition to DaSilva's revised motion for attorneys fees.  The government mistakenly and in good faith believed that DaSilva's second motion for FOIA fees was merely supplemental to the first and could not be opposed.  When alerted to its misunderstanding, the government immediately

---

[41] *Cf. La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995) (holding that refusing to award fees for costs litigation when the prevailing party "recovered only part of the costs and fees it requested . . . fell well within the district court's proper exercise of its discretion").

[42] *See Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990); *see also McCarty v. Thaler*, 376 F. App'x 442, 443 (5th Cir. 2010) (per curiam) (unpublished) ("The permissive language of Rule 6(b) shows that any grant of an extension of time for when an act must be done falls to the district court's discretion.").

[43] FED. R. CIV. P. 6(b)(1)(B).

[44] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

[45] *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 168 (5th Cir. 2006).

requested a brief extension of time and filed its memorandum in opposition within three days. This untimely filing resulted in a delay of only six business days to the consideration of DaSilva's motion.

Moreover, DaSilva was not prejudiced by the government's untimely opposition. Considering that the district court had *sua sponte* questioned several of Counsel's original timesheet entries, the court's close scrutiny of the revised timesheet would have occurred even without the government's untimely opposition. DaSilva's entire claim of prejudice rests on the alleged *ex parte* communication between counsel for USCIS and the district court's law clerk. This contact was purely administrative, however, and does not qualify as a proscribed *ex parte* communication.[46] Given the government's good faith misunderstanding, the minimal delay, and the lack of prejudice to DaSilva, the district court did not abuse its discretion in granting the government's motion.

## III.   CONCLUSION

The district court did not abuse its discretion in denying DaSilva attorneys fees under the EAJA, awarding $4,170 in attorneys fees under FOIA, or allowing USCIS to file a response out of time. The judgment of the district court is, in all respects,

AFFIRMED.

---

[46] The Code of Conduct for United States Judges permits communications for "scheduling, administrative, or emergency purposes" so long as they do not concern "substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result." CODE OF CONDUCT FOR U.S. JUDGES Canon 3(A)(4)(b).