# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 10, 2008        Decided June 26, 2009

No. 07-5315

ANTHONY SUMMERS,
APPELLANT

v.

DEPARTMENT OF JUSTICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 98cv01837)

*James H. Lesar* argued the cause and filed the briefs for appellant.

*Darrell C. Valdez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GINSBURG and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Anthony Summers brought this action to obtain certain records from the Federal Bureau of Investigation pursuant to the Freedom of Information Act. In 2005, after Summers and the Government had settled the case, Summers sought an award of attorneys' fees. The district court denied Summers's request because, having settled, he could not be said to have "substantially prevailed" in the case and was therefore ineligible to receive an award under the FOIA. Summers argues the amendment to the FOIA in the OPEN Government Act of 2007 applies retroactively, thereby making him eligible to recover attorneys' fees. We hold the 2007 Act does not apply retroactively and affirm the judgment of the district court denying Summers's fee request.

## I.  Background

Summers sought from the FBI records relating to Charles Gregory (aka "Bebe") Rebozo to aid him in writing a biography of former President Richard Nixon. When the FBI had not timely complied with his request, Summers filed this suit under the FOIA. The FBI then released certain of the documents it had located. The parties filed cross-motions for summary judgment with respect to some of the still-disputed documents. The district court granted the FBI's motion and Summers appealed.

This court denied the FBI's motion for summary affirmance and referred the matter to mediation. In 2005 the FBI agreed to disclose three names from a single document in exchange for Summers's voluntary dismissal of the case; the parties entered into a Settlement Agreement that self-referentially provides it "shall not constitute an admission of

success on the merits for purposes of any claim for attorneys' fees." The Agreement notwithstanding, Summers moved the district court for an award of attorneys' fees. The district court referred the matter to a magistrate judge, who denied the motion. The district court denied Summers's motion to reconsider because Summers had not received any court-ordered relief and was therefore ineligible to receive a fee award under the FOIA. *Summers v. U.S. Dep't of Justice*, No. 98cv01837, 2007 WL 2111049, *2-3 (July 23, 2007). Summers now appeals that decision.

## II. Analysis

The district court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any [FOIA] case ... in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Prior to 2002 this court applied the "catalyst theory" to determine whether a plaintiff had "substantially prevailed" and was therefore eligible for an award of attorneys' fees. *Oil, Chem. & Atomic Workers Int'l Union v. DOE*, 288 F.3d 452, 454 (2002) (*OCAW*). Under the catalyst theory, "[s]o long as the litigation substantially caused the requested records to be released, the FOIA plaintiff could recover attorney's fees even though the district court had not rendered a judgment in the plaintiff's favor." *Id.* (internal quotation marks omitted). If the catalyst theory still governed, then Summers would be eligible to receive attorneys' fees; the district court, however, would retain discretion to deny an award, s*ee Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992).

In *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, the Supreme Court rejected the catalyst theory, as applied to fee provisions in the Americans with Disabilities Act of 1990 and

the Fair Housing Amendments Act of 1988, because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." 532 U.S. 598, 605 (2001). In *OCAW*, we applied the teaching of *Buckhannon* to a request for attorneys' fees under the FOIA, stating that "in order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." 288 F.3d at 456-57 (quoting *Buckhannon*, 532 U.S. at 603).

As part of the OPEN Government Act of 2007, the Congress amended the FOIA to incorporate the catalyst theory. A plaintiff now qualifies as having "substantially prevailed" regardless whether he obtained a judicial order or consent decree or "obtained relief through ... a voluntary or unilateral change in position by the agency, if [his] claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

Summers argues the 2007 Act applies retroactively to his 2005 settlement of the case, thereby making him eligible to recover attorneys' fees. Alternatively, Summers argues the district court erred in holding him ineligible under the pre-Act version of the FOIA.

A.  Retroactivity

In *Landgraf v. USI Film Products*, 511 U.S. 244, 272-73 (1994), the Supreme Court reiterated the general rule that a statute should not be applied retroactively and then set forth the analysis to be used in determining whether a particular statute stands as an exception to that rule. If the statute does not clearly indicate either prospective-only or retroactive application, then:

> [T]he court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, [the] traditional presumption [against retroactive application] teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280.

Neither the 2007 Act nor the FOIA as amended says anything about the temporal reach of the amendment. We must therefore consider whether retroactive application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*

Application of the 2007 Act to facts predating its passage obviously would expose the Government to increased liability for past conduct by raising the possibility the Government would be liable for attorneys' fees in a case that was settled and, therefore, not an occasion for paying attorneys' fees under the pre-amendment rule of *Buckhannon*. The Government's calculus in settling Summers's case would have been different had it known the *Buckhannon* rule would not apply; its decision to settle reflects a calculation that the cost associated with disclosing the disputed information to Summers was less than the cost of further litigation, including the uncertainty concerning both the outcome and whether the district court would award the plaintiff attorneys' fees. If Summers's action had been filed after the effective date of the

2007 Act, and the Government therefore knew it might be liable for attorneys' fees, then it might not have settled the case.

Summers, citing *Bradley v. School Board of Richmond*, 416 U.S. 696 (1974), correctly points out that there is no *per se* rule against retroactive application of a statute amending or creating a provision for attorneys' fees. *Bradley* was a school desegregation case in which the district court awarded attorneys' fees to the plaintiffs based upon equitable principles. *Id.* at 706-07. While the appeal was pending, the Congress passed a statute specifically authorizing a fee award to the prevailing party in a school desegregation case. *Id.* at 709. The Supreme Court held the new fee provision applicable to that case. *Id.* at 724.

The Court in *Landgraf* distinguished *Bradley* as follows: "In light of the prior availability of a fee award, and the likelihood that fees would be assessed under pre-existing theories, we concluded [in *Bradley*] that the new fee statute simply 'd[id] not impose an additional or unforeseeable obligation' upon the school board." 511 U.S. at 278 (quoting 416 U.S. at 721). The present situation is also markedly different from that in *Bradley*. First, here there is no indication the district court would have awarded fees had it the statutory authority or equitable power to do so. On the contrary, the magistrate judge held Summers would not be entitled to an award even if he were eligible for one. Second, application of the fee statute in this case, unlike in *Bradley*, would impose an "unforeseeable obligation" upon the defendant by exposing it to liability for attorneys' fees for which it clearly was not liable before the passage of the 2007 Act. Moreover, "[b]ecause retroactivity raises special policy concerns, the choice to enact a statute that responds to a judicial decision is quite distinct from the choice to make the

responding statute retroactive." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 305 (1994).

Summers argues the presumption of the general rule against retroactive application of a statute is overcome by the clear intent of the Congress in passing the 2007 Act, but the evidence of intent he adduces is neither powerful nor even relevant. Summers first points to the committee report on the bill that became the Act, which states the purpose of amending the FOIA was "to clarify that a complainant has substantially prevailed in a FOIA lawsuit, and is eligible to recover attorney fees ... if the pursuit of a claim was the catalyst for the voluntary or unilateral change in position by the opposing party." S. REP. No. 110-59, at 6 (2007). Second, Summers points to this floor statement by Senator Leahy, a sponsor of the legislation: "The bill clarifies that *Buckhannon* does not apply to FOIA cases." 153 CONG. REC. S15701-04 (daily ed. Dec. 14, 2007). Putting aside the general problem that neither a committee nor a single Senator can speak for "the Congress," these specific statements simply do not speak to the issue of retroactivity.

In sum, the 2007 Act is silent with regard to its temporal reach; its application here would have "retroactive effect" because it would "increase a party's liability for past conduct" and there is no evidence of a "clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280. Therefore the Act does not apply to Summers's claims for attorneys' fees.

B. Pre-Amendment Eligibility

We now turn to Summers's argument that he is eligible to receive a fee award pursuant to the FOIA standard in effect prior to the passage of the 2007 Act. To grant a FOIA

plaintiff an award of attorneys' fees under that standard, the district court must have determined the plaintiff was not only eligible for but also entitled to an award. *Tax Analysts*, 965 F.2d at 1093. In the present case the district court (unlike the magistrate judge) went no further than to hold Summers was not eligible to receive a fee award inasmuch as he had not "substantially prevailed" in his FOIA action. *Summers*, 2007 WL 2111049, at *1 n.1. We review that determination *de novo* "because it rests on an interpretation of the statutory terms that define eligibility for an award." *Davy v. CIA*, 456 F.3d 162, 164 (2006) (internal quotation marks omitted).

To be eligible under the applicable standard, a plaintiff "must have been awarded some relief by [a] court, either in a judgment on the merits or in a court-ordered consent decree." *OCAW*, 288 F.3d at 456-57 (internal quotation marks omitted). Summers points to three identical orders issued by the district court as evidence he received court-ordered relief. In each the district court "ordered that the parties file another joint status report by [a specific date] indicating the additional disclosures defendant has made to plaintiff and whether plaintiff intends to compel the release of any withholdings." Summers argues these orders required the FBI to make disclosures but that is not correct.

The orders required the FBI to do no more than to join with the plaintiff in filing status reports updating the court on any voluntary disclosures the agency may have made. The FBI would not have violated the orders if it had refused to disclose a single document or datum. Consequently, the status reports do not affect a "court-ordered change in the legal relationship between the plaintiff and the defendant." *OCAW*, 288 F.3d at 458 (holding similar status reports did not constitute relief ordered by a court).

Finally, Summers argues the settlement agreement he executed with the FBI makes him eligible for a fee award because his dismissal of the action was made contingent upon the FBI's disclosing certain information. This argument fails the requirement that the plaintiff "ha[ve] been awarded some relief by the court." *Buckhannon*, 532 U.S. at 603. Neither the district court nor this court compelled the FBI to disclose anything. Again, we rejected a similar argument in *OCAW*. 288 F.3d. at 458-49.

Like the district court, we conclude Summers is not eligible to receive an award of attorneys' fees under the pre-amendment FOIA. Because he is ineligible to receive a fee award, like the district court, we do not consider whether he would be entitled to an award if he were eligible.

## III. Conclusion

The amendment to the FOIA in the OPEN Government Act of 2007 does not apply to this case because its application would increase the Government's liability for pre-enactment conduct and there is no clear evidence the Congress intended it to apply retroactively. Under the standard applicable to cases arising before the effective date of the 2007 Act, Summers is ineligible to receive an award of attorneys' fees because he received no court-ordered relief. The judgment of the district court is therefore

*Affirmed.*