# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 19, 2010          Decided July 6, 2010

No. 09-5189

JOHN DAVIS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:88-cv-00130-HHK)

*James H. Lesar* argued the cause and filed the briefs for appellant. *Daniel S. Alcorn* entered an appearance.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, *Heather Graham-Oliver*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: For forty-four years the Freedom of Information Act (FOIA) has facilitated public access to the records of federal agencies. *See* Pub. L. No. 89-554, § 552, 80 Stat. 378, 383 (1966) (codified as amended at 5 U.S.C. § 552 (Supp. III 2009)). This case has been pending for half that time. The appellant, John Davis, filed a FOIA request with the Department of Justice in 1986, seeking access to tape recordings made during an FBI investigation of a New Orleans mob boss. When the Department failed to produce the recordings, Davis filed this suit. The question in this appeal—his sixth by our count—is whether the OPEN Government Act of 2007, Pub. L. No. 110-175, § 4, 121 Stat. 2524, 2525, permits Davis to recoup the attorneys' fees he incurred during the protracted litigation that followed. It does not.

**I.**

There is no need to linger on the facts and procedural history of this case; we have unwound that yarn before. *See Davis v. DOJ (Davis IV)*, 460 F.3d 92 (D.C. Cir. 2006); *Davis v. DOJ (Davis I)*, 968 F.2d 1276 (D.C. Cir. 1992). The salient points are that the Department voluntarily released many of the requested tapes in 1995, one additional tape in 1999, but nothing more in the decade that followed. The district court granted summary judgment in favor of the Department in 2007, concluding that it had fulfilled its obligations under FOIA. *Davis v. DOJ*, No. 88-00130, 2007 WL 4275512 (D.D.C. Dec. 3, 2007), *aff'd*, No. 08-5024, Order at 1 (D.C. Cir. July 31, 2008). Davis then moved for attorneys' fees.

Section 552(a)(4)(E) of Title 5 makes plaintiffs who have "substantially prevailed" in FOIA litigation eligible for a

recovery of reasonable attorneys' fees. At one time, lower courts held that FOIA plaintiffs were eligible for a fee award if the lawsuit substantially caused the agency to release the requested records. Our circuit's interpretation of § 552(a)(4)(E) reflected this approach—known as the "catalyst theory"—when the Department handed its tape recordings over to Davis in 1995 and 1999. *See, e.g.*, *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364–65 (D.C. Cir. 1977).

But the Supreme Court rejected the catalyst theory in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). Construing two statutes allowing courts to award attorneys' fees to the "prevailing party," the Court held that a plaintiff whose lawsuit prompts the defendant to voluntarily change its conduct does not qualify for a fee award. *See id.* at 600–01. We subsequently concluded that "the existing law of our circuit must give way" to *Buckhannon* and held that a FOIA plaintiff has "substantially prevailed" only if he has "'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy (OCAW)*, 288 F.3d 452, 456–57 (D.C. Cir. 2002) (quoting *Buckhannon*, 532 U.S. at 603).

Disapproving of the effect these cases had on the disclosure policies of administrative agencies, Congress enacted the OPEN Government Act of 2007 to establish that the catalyst theory applied in FOIA cases. *See Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008). Under the new statute, a plaintiff "substantially prevail[s]" (and is thus eligible for a fee award) if his suit yields relief in the form of "a judicial order, or an enforceable written agreement or consent decree" or "a voluntary or unilateral change in

position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii) (Supp. III 2009) [hereinafter 2007 Act].

Prior to the 2007 Act, we determined in *Davis IV* that Davis was ineligible for attorneys' fees under *Buckhannon* and *OCAW*. 460 F.3d at 105–06. We remanded for further proceedings on the merits, and Davis renewed his fee request in light of the 2007 Act. A magistrate judge agreed with Davis that the new statute governed his request for attorneys' fees and recommended an award of $112,029.48. The district court disagreed and denied Davis's motion. We affirm.

## II.

Whether Davis is now eligible for attorneys' fees is a question of legislative retroactivity: Does the 2007 Act resurrect the catalyst theory for cases in which the agency voluntarily changed its position before the statute's enactment? A statute operates retroactively if it "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). There is a "well-settled presumption" against giving statutes retroactive effect. *Id.* at 277. *See generally Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 840–58 (1990) (Scalia, J., concurring) (tracing the historical development of the presumption); DANIEL E. TROY, RETROACTIVE LEGISLATION 25–43 (1998) (same). The presumption prohibits courts from applying a new provision in a way that would "'affect[] substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment,'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Landgraf*, 511 U.S. at 278), "unless Congress has clearly manifested its intent to the contrary," *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997).

*Summers v. Department of Justice*, 569 F.3d 500 (D.C. Cir. 2009), largely determined the temporal scope of the 2007 Act. *Summers* involved a request for attorneys' fees in a FOIA lawsuit that was settled in 2005, after *OCAW* but before the 2007 Act. *See id.* at 502. The district court held the plaintiff ineligible for a fee award under *OCAW*. *Id.* The 2007 Act took effect while the appeal was pending, and the plaintiff asked us to apply the new statute. *See id.* at 503–04. The *Summers* court observed that because the government had voluntarily relinquished the records, it was not liable for attorneys' fees "under the pre-amendment rule of *Buckhannon*." *Id.* at 503. Applying the new law would therefore "impose an 'unforeseeable obligation' upon the defendant by exposing it to liability for attorneys' fees for which it clearly was not liable before." *Id.* at 504 (quoting *Landgraf*, 511 U.S. at 278). Moreover, the court found that the text of the 2007 Act was "silent with regard to its temporal reach," and that its legislative history contained "no evidence of a 'clear congressional intent favoring [retroactive application].'" *Id.* (quoting *Landgraf*, 511 U.S. at 280). Absent clear instructions from Congress, the *Summers* court declined to apply the 2007 Act retroactively.

Davis contends *Summers* was wrongly decided. *Summers*, of course, is the law of the circuit, and "[o]ne three-judge panel . . . does not have the authority to overrule another three-judge panel of the court." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc); *see also Davis IV*, 460 F.3d at 106. Davis's arguments that *Summers* is not binding are without merit. Accordingly, we turn to his two attempts to distinguish the case.

First, Davis argues that the 2007 Act would not operate retroactively here because the statute simply reinstates the standard this court applied when the Department voluntarily

released the tapes in 1995 and 1999. The government could not foresee its potential liability for fees in *Summers* because it settled the case after *Buckhannon* and *OCAW*. By contrast, when the government disclosed the tapes in this case, it could expect to pay attorneys' fees under the catalyst theory. At least in these circumstances, Davis contends, the 2007 Act *restores* but does not "'*increase* a party's liability for past conduct,'" *Summers*, 569 F.3d at 504 (quoting *Landgraf*, 511 U.S. at 280) (emphasis added), and therefore is not impermissibly retroactive.

The Supreme Court recognized the "equitable appeal" of this line of argument in *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 310 (1994), but ultimately rejected it. At issue in *Rivers*, the companion case to *Landgraf*, was a provision of the Civil Rights Act of 1991 that "overruled" the Supreme Court's holding in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), that 42 U.S.C. § 1981 did not provide a cause of action for discriminatory termination. *See Rivers*, 511 U.S. at 304–05, 306–07. The plaintiffs in *Rivers* were fired before the Court decided *Patterson*, at a time when circuit precedent would have allowed their claims to go forward. *See id.* at 309 n.9. But when the plaintiffs invoked the 1991 Act on appeal, the Court rejected their argument "that restorative statutes do not implicate fairness concerns relating to retroactivity . . . when . . . the new statute simply enacts a rule that the parties believed to be the law when they acted." *Id.* at 309; *see id.* at 309–13. "Even when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions," the Court explained, "its intent to reach conduct preceding the 'corrective' amendment must clearly appear." *Id.* at 313.

*Rivers* forecloses Davis's argument. It does not matter that Davis "substantially prevailed *prior* to this Court's decision in [*OCAW*]." Appellant's Br. at 2. Although our pre-*OCAW* decisions endorsed the catalyst theory for attorneys' fees under FOIA, the Supreme Court in *Buckhannon* made clear that our circuit and others had gotten it wrong. *OCAW*, 288 F.3d at 454–57; *accord Zarcon, Inc. v. NLRB*, 578 F.3d 892, 894–95 (8th Cir. 2009); *Or. Nat'l Desert Ass'n v. Locke*, 572 F.3d 610, 617–18 (9th Cir. 2009); *Union of Needletrades, Indus. & Textile Employees, AFL-CIO v. INS*, 336 F.3d 200, 203–07 (2d Cir. 2003). *Buckhannon*, moreover, did not apply only to future conduct. While legislation is presumptively prospective, judicial decisions are typically retrospective. *See United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student."); *see, e.g.*, *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 94–99 (1993); *INS v. St. Cyr*, 533 U.S. 289, 316–17 (2001). Because "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the [court's] decision," *Rivers*, 511 U.S. at 312–13, "*Buckhannon* controls" the meaning of the FOIA attorneys' fees provision from the time of the statute's enactment until its amendment in 2007, *OCAW*, 288 F.3d at 457. Therefore, in "ask[ing] whether the new provision attaches new legal consequences to events completed before its enactment," *Landgraf*, 511 U.S. at 269–70, we must measure the 2007 Act against our post-*Buckhannon* interpretation of the statute and not the decisions that came before. *See Rivers*, 511 U.S. at 313 (explaining that *Patterson*, rather than earlier circuit precedent, "provides the baseline for [the Court's] conclusion that the [new statute] would be 'retroactive' if applied to cases arising before [the statute's effective] date"); *see also AT&T Corp. v. Hulteen*, 129 S. Ct. 1962, 1971 n.5 (2009). Prior to the 2007 Act, the legal

consequences of the Department's voluntary release of the tapes—as determined by *Buckhannon* and *OCAW*—did not include liability for attorneys' fees. *See Davis IV*, 460 F.3d at 105–06. Because reliance on the 2007 Act would give rise to liability for attorneys' fees where none existed before, *Summers* precludes its application.

Davis's second effort to distinguish *Summers* rests on the fact that the magistrate judge in this case found that Davis was entitled to attorneys' fees. He notes that in *Summers* "there [was] no indication the district court would have awarded fees had it the statutory authority or equitable power to do so." 569 F.3d at 504. Davis lifts the *Summers* court's language out of context. In making this observation, the court was distinguishing *Bradley v. School Board of Richmond*, 416 U.S. 696 (1974), and the passage can be understood only against that backdrop.

The plaintiffs in *Bradley* were a group of parents who brought a class action to desegregate the public schools in Richmond, Virginia. *Id.* at 699. After they prevailed in the district court, they were awarded attorneys' fees. *Id.* at 705–06. "Noting the absence at the time of any explicit statutory authorization for an award of fees in school desegregation actions, the court based the award on two alternative grounds rooted in its general equity power." *Id.* at 706 (internal citation omitted); *see also id.* at 705–10. While the appeal was pending, Congress enacted the Emergency School Aid Act, Pub. L. No. 92-318, § 718, 86 Stat. 235, 369 (1972), which expressly authorized such fee awards. Holding that the new statute governed and lacked retroactive effect under these circumstances, the *Bradley* Court explained that the statute did "not impose an additional or unforeseeable obligation" on the school board because the board had acted "with the knowledge that, under different theories, . . . [it] could have

been required to pay attorneys' fees." *Bradley*, 416 U.S. at 721. As the Supreme Court later explained, the statute at issue in *Bradley* did not have impermissible retroactive effects "[i]n light of the prior availability of a fee award, and the likelihood that fees would be assessed under pre-existing theories." *Landgraf*, 511 U.S. at 278; *see Martin v. Hadix*, 527 U.S. 343, 359–60 (1999).

What distinguishes *Bradley*—and by implication *Summers*—is the "prior availability" of attorneys' fees "under pre-existing theories." *Landgraf*, 511 U.S. at 278; *see Bradley*, 416 U.S. at 721. The statute at issue in *Bradley* did not operate retroactively because the "extent of the change in the law" was negligible. *Landgraf*, 511 U.S. at 270. Davis, unlike the *Bradley* plaintiffs, was not eligible for attorneys' fees before Congress enacted the relevant statute. *See Davis IV*, 460 F.3d at 105–06. Although the magistrate judge found Davis entitled to a fee award, he did so only after applying the 2007 Act retroactively—wrongly as it turns out. He did not rely on any pre-existing authority. In any event, the magistrate's legal error has no bearing on our own retroactivity analysis.

## III.

The decision of the district court is

*Affirmed*.