**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEVIN POULSEN,
          *Plaintiff-Appellant*,

    v.

DEPARTMENT OF DEFENSE; OFFICE
OF THE DIRECTOR OF NATIONAL
INTELLIGENCE; UNITED STATES
DEPARTMENT OF JUSTICE,
          *Defendants-Appellees.*

No. 19-16430

D.C. No.
3:17-cv-03531-
WHO

OPINION

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted October 15, 2020
San Francisco, California

Filed April 16, 2021

Before:  Kim McLane Wardlaw and Daniel P. Collins,
Circuit Judges, and Richard K. Eaton,* Judge.

---

    * Richard K. Eaton, Judge of the United States Court of International
Trade, sitting by designation.

Opinion by Judge Wardlaw;
Partial Concurrence and Partial Dissent by Judge Collins;
Dissent by Judge Eaton

## SUMMARY**

### Freedom of Information Act / Attorneys' Fees

The panel reversed the district court's denial of a motion for attorneys' fees in a Freedom of Information Act ("FOIA") lawsuit against the Department of Justice ("DOJ"), and remanded.

Plaintiff initially submitted a FOIA request for records related to the alleged surveillance of President Trump and his advisors during the 2016 election. The DOJ responded with a *Glomar* response that neither confirmed nor denied the existence of such records. After plaintiff filed this lawsuit, President Trump declassified a memorandum that divulged the existence of responsive records; and the DOJ subsequently agreed to turn over any newly revealed, non-exempt documents by a specific date.

The panel held that plaintiff "substantially prevailed" under 5 U.S.C. § 552(a)(4)(E) because be obtained relief through a judicial order that changed the legal relationship between the parties, and concluded that he was "eligible" for a fee award under 5 U.S.C. § 552(a)(4)(E)(ii)(I). The panel noted that Congress passed the OPEN Government Act of

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

2007 (the "2007 Amendments"), which provided that a plaintiff may establish eligibility for FOIA attorneys' fees in one of two ways. The panel remanded to the district court to determine in the first instance whether plaintiff was "entitled" to those fees given the unique circumstances due to the government's change in position in the case.

Judge Collins concurred in part and concurred in the judgment. He joined the majority opinion except as to footnote 7, which he concluded cited legislative history that made no difference to the outcome of the case where the words of the statute were unambiguous.

Court of International Trade Judge Eaton dissented, and would find that plaintiff was not eligible for attorneys' fees under either category provided for by the 2007 Amendments. He would hold that plaintiff had only shown that the agency's change in position, due to the President's declassification, was memorialized in an enforceable court order, but plaintiff had not shown that his lawsuit was a substantial cause (or any cause at all) of the relief he obtained.

## COUNSEL

W. Gordon Kaupp (argued) and Beth Feinberg, Kaupp & Feinberg LLP, San Francisco, California; Colleen Flynn, Los Angeles, California; for Plaintiff-Appellant.

Leif Overvold (argued) and Charles W. Scarborough, Appellate Staff; David L. Anderson, United States Attorney; Ethan P. Davis, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

**OPINION**

WARDLAW, Circuit Judge:

Kevin Poulsen appeals the district court's denial of his motion for attorney fees in this Freedom of Information Act ("FOIA") lawsuit against the Department of Justice ("DOJ"). Poulsen initially submitted a FOIA request for records related to the alleged electronic surveillance of President Trump and his advisors during the 2016 election. The DOJ responded to that request with a *Glomar* response, neither confirming nor denying the existence of those records. After Poulsen filed this lawsuit, however, President Trump declassified a memorandum that divulged the existence of responsive records. The DOJ subsequently agreed to turn over any newly revealed, non-exempt documents by a specific date. The district court adopted the DOJ's proposal in a written order.

We must decide whether Poulsen "substantially prevailed" under 5 U.S.C. § 552(a)(4)(E), thereby making him eligible for an award of attorney fees. We conclude that because Poulsen obtained relief through a judicial order that changed the legal relationship between the parties, he is eligible for a fee award under 5 U.S.C. § 552(a)(4)(E)(ii)(I). We remand to the district court to determine whether Poulsen is "entitled" to those fees given the unique circumstances underlying the government's change of position in this case.

**I.**

Poulsen is a journalist and contributing editor for the news media outlet *The Daily Beast*. On March 4, 2017, Poulsen submitted a FOIA request to the DOJ and other agencies seeking several categories of records related to the

alleged electronic surveillance of Donald Trump and his advisors during the 2016 election. On April 4, the DOJ issued a *Glomar* response. "A *Glomar* response 'neither confirms nor denies the existence of documents pertaining to the request'" because even that initial step would threaten one of the interests protected by a FOIA exemption. *First Amend. Coal. v. DOJ*, 878 F.3d 1119, 1122 n.3 (9th Cir. 2017) (quoting *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 105 (2d Cir. 2014)).[1]

Separately, in March 2017, the House Permanent Select Committee on Intelligence ("HPSCI") announced an investigation into the alleged Russian interference in the 2016 election. As part of the HSPCI's investigation, it sought and ultimately obtained access to classified Foreign Intelligence Surveillance Act ("FISA") applications and orders to conduct surveillance of Carter Page—an advisor to the Trump presidential campaign during the relevant period.

---

[1] "The *Glomar* doctrine originated in a FOIA case concerning records pertaining to the Hughes Glomar Explorer, an oceanic research vessel." *Wilner v. NSA*, 592 F.3d 60, 67 (2d Cir. 2009) (citing *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976)). In that case, a journalist filed a FOIA request with the Central Intelligence Agency ("CIA"), seeking all records related to the agency's efforts to convince members of the media not to publish what they had learned about the Glomar Explorer. *Phillippi*, 546 F.2d at 1011. In response, the CIA asserted that the "existence or nonexistence of the requested records was itself a classified fact exempt from disclosure under . . . FOIA," and "that, in the interest of national security, involvement by the U.S. Government in the activities which are the subject matter of [the] request can neither be confirmed nor denied." *Id.* at 1012. Thus, "[t]his principle—that an agency may, pursuant to FOIA's statutory exemptions, refuse to confirm or deny the existence of certain records in response to a FOIA request— has since become known as the *Glomar* doctrine." *Wilner*, 592 F.3d at 67; *see also Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992).

On June 19, 2017, Poulsen filed this lawsuit, contending that defendants' FOIA responses were either untimely or legally deficient.[2]  In November, the agencies moved for summary judgment to confirm the adequacy of their responses.   In early February 2018, however, while defendants' motion for summary judgment was pending, President Trump declassified a memorandum written by HSPCI Chairman Devin Nunes (the "Nunes Memo").  As described in a declaration supporting the agencies' summary judgment motion, the Nunes Memo "summarizes, characterizes, and offers opinions about the . . . FISA applications submitted by the [DOJ] to the Foreign Intelligence Surveillance Court (FISC), and the orders obtained from the FISC in response . . . ."  Thus, although the President's declassification publicly revealed the *existence* of the Carter Page FISA applications, it did not "broadly declassify all information contained in or related to the Carter Page FISA applications and orders."  Moreover, the Nunes Memo did not "quote any portions of the FISA applications or FISC orders on Carter Page."

Following the President's declassification of the Nunes Memo, the DOJ withdrew its *Glomar* response "as to the existence of the Page FISA applications and orders identified in the Nunes Memo."   The defendant agencies simultaneously moved to withdraw their motion for summary judgment to determine whether the declassification and dissemination of the Nunes Memo "impact[ed] their response[s]" and whether they could now acknowledge or produce documents responsive to Poulsen's

---

[2] Poulsen originally filed this action against the DOJ, the Department of Defense, and the Office of the Director of National Intelligence.  However, he sought attorney fees from only the DOJ, and thus the DOJ is the only defendant in this appeal.

request.   On February 16, the district court granted the motion over Poulsen's objection.

On February 24, 2018, the HSPCI's Democratic members released a memorandum authored by ranking member Adam Schiff (the "Schiff Memo").  The release of certain information in the Schiff Memo "was a consequence of the President's decision to declassify the Nunes Memo," and the redacted portions of the Schiff Memo remained "properly classified."  Like the Nunes Memo, the Schiff Memo "summarizes, characterizes, and offers opinions" about the FISA applications submitted by the DOJ to the FISC, and the resulting FISC orders.

In light of the President's declassification of the Nunes Memo and the publication of the Schiff Memo, defendants reevaluated what information "must now be disclosed under the FOIA" by, in part, "analyz[ing] each piece of information in the FISA materials to determine whether it matche[d] information disclosed in the Nunes and Schiff Memos."  The DOJ formally agreed to review and process the Page FISA records for release during the March 27, 2018 case management conference among the parties.  The district court adopted defendants' proposed disclosure schedule in a minute order dated that day (the "March 27 Order"), and directed the DOJ to "complete processing and production of responsive, non-exempt documents subject to FOIA by July 20, 2018."[3]  In accordance with the district court's order, the

---

[3] Several parallel lawsuits adopted an identical disclosure schedule. *See James Madison Project v. DOJ*, No. 17-cv-597-APM (D.D.C. Mar. 19, 2018) (minute entry); *Gizmodo Media Grp., LLC v. DOJ*, No. 17-cv-3566-DLC (S.D.N.Y. Mar. 30, 2018) (ECF No. 44); *N.Y. Times Co. v. DOJ*, No. 18-cv-2054-AT (S.D.N.Y. Apr. 10, 2018) (ECF No. 11); *Judicial Watch, Inc. v. DOJ*, No. 18-cv-245-CRC (D.D.C. Apr. 23, 2018 and May 18, 2018) (ECF Nos. 7, 8).

DOJ produced 412 pages of responsive documents on July 20.  The DOJ then moved for summary judgment to confirm the accuracy of its responses to Poulsen's remaining FOIA requests.  Granting the motion, the district court concluded that "the government has demonstrated substantial grounds to maintain the *Glomar* responses to everything except the documents necessarily covered by the limited public acknowledgement of the electronic surveillance of Carter Page."

With some of the documents he initially sought in hand, Poulsen moved for attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), arguing that he was both eligible and entitled to an award.  The district court denied Poulsen's motion, concluding that he was not eligible for attorney fees because he "did not secure a change in the legal relationship between the parties nor [did he] prevail on the merits of his arguments."  Because the district court concluded that Poulsen was ineligible for fees, it did not decide whether Poulsen was entitled to fees.  This timely appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291.  Although we review a district court's ultimate decision regarding whether to award attorney fees for abuse of discretion, we review de novo whether the district court applied the correct legal standard.  *Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 613–14 (9th Cir. 2009); *see also Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96–97 (D.C. Cir. 2020) (per curiam) (explaining that the district court's determination regarding fee eligibility is reviewed de novo to the extent that it "rest[ed] on an interpretation of the statutory terms that define eligibility for an award" (citation omitted)).

**III.**

FOIA provides that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant has "substantially prevailed" if he has "obtained relief through either" (1) "a judicial order, or an enforceable written agreement or consent decree," *id.* § 552(a)(4)(E)(ii)(I), or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial," *id.* § 552(a)(4)(E)(ii)(II). A complainant is deemed "eligible" for a fee award by satisfying either subsection.

But simply because a party is eligible for an award of fees and costs does not mean that the district court must grant such an award. *See Church of Scientology of Cal. v. U.S. Postal Serv.,* 700 F.2d 486, 489 (9th Cir. 1983), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001). "If the plaintiff demonstrates that he is eligible for fees (*i.e.*, proves that he has 'substantially prevailed'), 'the district court may, in the exercise of its discretion, determine that the [complainant] is *entitled* to an award of attorney's fees.'" *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991) (per curiam) (quoting *Church of Scientology*, 700 F.2d at 492).

**A.**

Poulsen contends that he substantially prevailed because he obtained relief through the March 27 Order, thus establishing eligibility for a fee award under 5 U.S.C. § 552(a)(4)(E)(ii)(I). He relies on the portion of the order that provides:

> [I]t is ORDERED that: . . . With respect to
> the schedule for processing the remaining
> records and DOJ entities, I adopt the
> defendants' schedule: they shall . . . complete
> processing and production of responsive,
> non-exempt documents subject to FOIA by
> July 20, 2018 . . . .

The district court rejected this argument because the DOJ's
change in position was not caused by Poulsen's lawsuit, but
instead resulted from the President's declassification of the
Nunes Memo and the subsequent release of the Schiff
Memo—matters "occurring outside of the litigation."
However, in light of the 2007 Amendments to FOIA, we
think it clear that a complainant need not show a causal
connection between the FOIA lawsuit and the government's
change in position to establish that he has "substantially
prevailed" under 5 U.S.C. § 552(a)(4)(E)(ii)(I).[4]

## B.

"[O]ur inquiry begins with the statutory text."
*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th
Cir. 2009) (citation omitted). "If the text is clear, as it is
here, it ends there as well." *First Amend. Coal.*, 878 F.3d at
1131 (Berzon, J., concurring in the judgment). Section
552(a)(4)(E)(ii)(I) provides that a plaintiff has "substantially
prevailed" if he has "obtained relief through . . . a judicial
order, or an enforceable written agreement or consent

---

[4] Because we conclude that Poulsen was eligible for attorney fees
by obtaining relief through a "judicial order" under 5 U.S.C.
§ 552(a)(4)(E)(ii)(I), we do not address his alternative argument that he
was eligible through a "voluntary or unilateral change" in the agency's
position under § 552(a)(4)(E)(ii)(II).

decree." As written, nothing in the subsection's text suggests that we are to look behind the judicial order and ascertain how it came into existence. Rather, it requires only the entering of an order of the sort described in that subsection.[5]

The history of FOIA's fee-shifting provision also supports this interpretation of § 552(a)(4)(E)(ii)(I). Before

---

[5] Our decision in *First Amendment Coalition* focused solely on interpreting § 552(a)(4)(E)(ii)(II) (an agency's "voluntary or unilateral change in position"), and therefore does not dictate the outcome here. *See First Amend. Coal.*, 878 F.3d at 1127 ("But subsection E(ii)(II), relevant to this appeal . . . . "); *id.* at 1131 (Berzon, J., concurring in the judgment) ("We are concerned with subsection (II).").

We note, however, that the panel in *First Amendment Coalition* sharply divided on whether § 552(a)(4)(E)(ii)(II) requires a complainant to demonstrate causation in *every* instance. *Compare First Amend. Coal.*, 878 F.3d at 1128 (majority opinion) ("Judge Murguia and I believe that we should join our sister circuits in holding that, under the catalyst theory, there still must be a causal nexus between the litigation and the voluntary disclosure or change in position by the Government."), *with id.* at 1141 (Murguia, J., concurring in part and concurring in the judgment) ("In the *majority* of FOIA fee cases, the catalyst theory of recovery will be the appropriate way to analyze the plaintiff's eligibility for fees. But, to my mind, a catalyst theory of recovery *does not suit the facts of this case*." (emphases added)). Thus, it remains unclear whether a majority of the panel in fact endorsed the case's purported holding that a causal connection *must* be established under § 552(a)(4)(E)(ii)(II). *See First Amend. Coal*., 878 F.3d at 1131 (Berzon, J., concurring in the judgment) ("Because Judge Murguia and I, although for different reasons, would hold that even absent a judgment, causation is *not* always a necessary condition of fee eligibility for FOIA complainants, there is in fact no majority for the holding that causation has to be demonstrated."); *see also Grand Canyon Tr.*, 947 F.3d at 99–100 (Randolph, J., concurring in the judgment) (rejecting the D.C. Circuit's interpretation that § 552(a)(4)(E)(ii)(II) requires a showing of causation as mere dicta and endorsing Judge Berzon's analysis in *First Amendment Coalition*).

2001, courts construed fee eligibility broadly under what was known as the "catalyst theory." *First Amend. Coal.*, 878 F.3d at 1126–27 (recounting the history of FOIA's fee-shifting provision). "Under this doctrine, a plaintiff 'substantially prevailed' not only when he obtained an official disclosure order from a court, *but also when* he substantially caused the government to release the requested documents before final judgment." *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524–25 (D.C. Cir. 2011) (emphasis added). Then, in 2001, the Supreme Court rejected the catalyst theory in *Buckhannon*, holding that plaintiffs "generally would only be eligible for attorney fees if they were 'awarded some relief by [a] court.'" *Id.* at 525 (quoting *Buckhannon*, 532 U.S. at 603). The Court noted that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon*, 532 U.S. at 605 (emphasis in original).[6]

---

[6] In other words, by eliminating the catalyst theory for establishing fee eligibility, *Buckhannon* eliminated the substantial cause requirement that went with it. *See* 532 U.S. at 604–05. Indeed, the *Buckhannon* Court rejected the catalyst theory in part because the Court thought its inquiry into "whether the lawsuit was a substantial rather than an insubstantial cause of the defendant's change in conduct" would unduly complicate what was supposed to be a readily administrable standard. *Id.* at 610. The dissent nonetheless asserts that, pre-*Buckhannon*, a causation requirement applied across-the-board, even when the plaintiff prevailed through a judicial order, and that *Buckhannon* left that rule in place as to judicial orders. Dissent at 20. That is hard to square with *Buckhannon*'s critique of inquiries into causation, and the dissent cites nothing in the Court's opinion that supports a causation requirement in the case of judicial orders, court-ordered consent decrees, and the like.

But less than a decade later, the winds again shifted when Congress passed the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (2007) (the "2007 Amendments"). The 2007 Amendments "abrogated the rule of *Buckhannon* in the FOIA context and revived the possibility of FOIA fee awards *in the absence of a court decree*." *Brayton*, 641 F.3d at 525 (emphasis added). Thus, in addition to the post-*Buckhannon* requirement for establishing fee eligibility through a court order, the 2007 Amendments "redefined 'substantially prevail[ing]' to *include* 'obtain[ing] relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.'" *Id.* (quoting 5 U.S.C. § 552(a)(5)(E)(ii)) (emphasis added).

In other words, following the enactment of the 2007 Amendments, a plaintiff may establish eligibility in one of two ways. Under § 552(a)(5)(E)(ii)(I), which codified the post-*Buckhannon* but pre-2007 Amendments avenue, a plaintiff must show that he "obtained relief through . . . a judicial order, or an enforceable written agreement or consent decree." Alternatively, under § 552(a)(5)(E)(ii)(II), which has been widely understood as reinstating the pre-*Buckhannon* catalyst theory, a plaintiff must demonstrate a "voluntary or unilateral change in position by the agency, if

---

At bottom, the dissent, citing the *Buckhannon* concurrence, misunderstands the role of causation in relation to § 552(a)(5)(E)(ii)(I), the judicial order subsection. *See* Dissent at 20. The *Buckhannon* concurrence merely confirms that, for a plaintiff to have substantially prevailed, "the outcome" must have been "at least *the product of*, and bear[] the sanction of, *judicial action*." 532 U.S. at 618 (Scalia, J., concurring) (emphasis added). The only "causation" requirement referenced in this language is that the judicial order caused the outcome, i.e., altered the legal relationship between the parties, *not* that the independent actions of one of the litigants did.

[his] claim is not insubstantial." *See First Amend. Coal.*, 878 F.3d at 1128 (collecting cases). It is only the latter avenue that potentially requires a showing of causation.[7] *See id.*

## C.

Our holding is in accord with that of the D.C. Circuit in *Davy v. CIA*, 456 F.3d 162 (D.C. Cir. 2006). In *Davy*, the plaintiff brought a FOIA lawsuit after the CIA denied his request for documents related to the CIA's "alleged role in the assassination of President John F. Kennedy." *Id.* at 163. The parties then "reached a Joint Stipulation for the production of responsive documents," which required the CIA to "provide Plaintiff [with] all responsive documents, if any, . . . by certain dates." *Id.* at 164 (internal quotation marks omitted). Once the district court "approved the Joint Stipulation and memorialized it in a court order," the CIA complied and produced the documents. *Id.*

The D.C. Circuit held that Davy "substantially prevailed" when the district court issued that order because (1) "the order changed the 'legal relationship between [the plaintiff] and the defendant,'" *id.* at 165 (quoting *Buckhannon*, 532 U.S. at 604), and (2) "Davy was awarded

---

[7] Although the text of the statute is clear, and we thus need not look to legislative materials for support, we note that the 2007 Amendments' legislative history reinforces the conclusion already made plain in FOIA's text. The relevant Senate Judiciary Committee report states the 2007 Amendments were intended "to clarify that a complainant has substantially prevailed in a FOIA lawsuit . . . if the complainant has obtained relief through a judicial or administrative order *or* if the pursuit of a claim was the catalyst for the voluntary or unilateral change in position by the opposing party." S. Rep. No. 110-59, at 6 (2007) (emphasis added). We decline to gloss over Congress's use of this disjunctive language.

some relief on the merits of his claim," *id.*  Prior to the issuance of the order, "the CIA was not under any judicial direction to produce documents by specific dates." *Id.* at 166.  Following the entry of the court's order, however, "timely production of nonexempt documents by the [CIA] could no longer be described as a voluntary change in the defendant's conduct." *Id.* (internal quotation marks and citation omitted).  "If the [a]gency failed to comply with the order, it faced the sanction of contempt." *Id.*; *see also Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008); *Sierra Club v. EPA*, 75 F. Supp. 3d 1125, 1141 (N.D. Cal. 2014).

Here, the effect of the March 27 Order is indistinguishable from that of the district court's order in *Davy*.  On March 27, 2018, the district court directed the DOJ to "complete processing and production of responsive, non-exempt documents subject to FOIA by July 20, 2018." Prior to this order, the DOJ "was not under any judicial direction to produce documents by specific dates; the [March 27 Order] changed that by requiring the Agency to produce all 'responsive documents' by the specified date[]." *Davy*, 456 F.3d at 166.  "Had the [DOJ] reneged on its promise . . . , forgot[ten] to do so, or even delayed disclosure, it would have been subject to contempt," *Judicial Watch*, 522 F.3d at 370, a consequence that the government could not deny during oral argument.  The DOJ's subsequent production of documents could no longer be characterized as "voluntary," and the judicial order therefore altered the legal relationship between the parties.  *See Davy*, 456 F.3d at 165–66; *see also Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 197 (D.C. Cir. 2007) ("Once an order has been adopted by the court, *requiring the agency to release documents*, the legal relationship between the parties changes." (emphasis in original)); *Sierra Club*, 75 F. Supp.

3d at 1141; *Elec. Priv. Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 344 (D.D.C. 2014); *Citizens for Resp. & Ethics in Wash. v. DOJ*, 820 F. Supp. 2d 39, 43–45 (D.D.C. 2011).

We reject the government's attempt to reduce the March 27 Order to a mere scheduling order that "simply memorialized and adopted" the DOJ's changed position. By its plain terms, it "ORDERED . . . [the] production of responsive, non-exempt documents subject to FOIA by July 20, 2018." Thus, the March 27 Order is distinguishable from those orders deemed "procedural" in nature (i.e., "conduct a search"), as opposed to "substantive" (i.e., "produce documents"). *Davy*, 456 F.3d at 165 (citing *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 458 (D.C. Cir. 2002)); *cf. Summers v. DOJ*, 569 F.3d 500, 505 (D.C. Cir. 2009) (finding the plaintiff ineligible for a fee award where "[t]he orders required the FBI to do no more than to join with the plaintiff in filing status reports updating the court on any voluntary disclosures the agency may have made"). Moreover, the government's agreement to, or even its proposal of, specific terms is irrelevant to our analysis. *See Judicial Watch*, 522 F.3d at 370 ("[O]rders like these, even when voluntarily agreed to by the government, are sufficient to make plaintiffs eligible for attorneys' fees under FOIA."); *Campaign for Responsible Transplantation*, 511 F.3d at 197 ("The agreement of the defendant to terms that are mandated by a court order is besides the point.").

The March 27 Order "affirmatively require[d] the processing and production of documents by a date certain." *Citizens for Resp. & Ethics*, 820 F. Supp. 2d at 44 (citing *Campaign for Responsible Transplantation*, 511 F.3d at 197). We therefore reject the government's effort to recast it as a mere scheduling order through which Poulsen obtained nothing.

We note, however, that our analysis does not render irrelevant issues related to how the judicial order came into existence.  Indeed, whether the government's initial nondisclosure position was legally correct is a factor that the district court must weigh at the discretionary entitlement phase.  *See*, *e.g.*, *Brayton*, 641 F.3d at 526–28 (holding that even if the plaintiff was eligible to receive attorney fees, he was not entitled to an award because the government's initial position refusing the FOIA request was legally correct).

## IV.

Because we conclude that Poulsen is eligible for a fee award, the district court must now determine whether he is entitled to such an award.  *Or. Nat. Desert Ass'n*, 572 F.3d at 614.  The district court did not reach this precise question because it determined that Poulsen was ineligible for a fee award.  We reject Poulsen's invitation to examine whether he is entitled to attorney fees as a matter of law and instead remand so that the district court may weigh all factors relevant to the entitlement analysis in the first instance.

**REVERSED AND REMANDED**.

COLLINS, Circuit Judge, concurring in part and concurring in the judgment:

I join Judge Wardlaw's opinion except as to footnote 7, which insists on citing legislative history that can make no difference to the outcome of this case.

As the portion of the opinion that I join persuasively explains, nothing in the relevant text of the statute requires an inquiry into what *caused* a court to grant relief to the

plaintiff through a judicial order; it is enough that the plaintiff "obtained relief through . . . a judicial order." *See* 5 U.S.C. § 552(a)(4)(E)(ii)(I). Where, as here, "the words of a statute are unambiguous, then, this first canon"—*i.e.*, that the plain meaning of the text controls—"is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citation omitted); *see also* Maj. Opin. at 10 ("Our inquiry begins with the statutory text," and "[i]f the text is clear, as it is here, it ends there as well." (simplified)).

Resort to a Senate Report here is therefore inappropriate, no matter what that report states: if it happens to support what the text says, it is superfluous; and if it contradicts the text, it can be given no weight. Moreover, this Senate Report does not reflect "Congress's use of . . . language," Maj. Opin. at 14 n.7; it reflects only the thoughts of the staff who wrote it and the few Senators (if any) who read it. *See Zedner v. United States*, 547 U.S. 489, 510 (2006) (Scalia, J., concurring in part & in the judgment) (warning that such use of legislative history "accustoms us to believing that what is said by a single person in a floor debate or by a committee report represents the view of Congress as a whole—so that we sometimes even will say (when referring to a floor statement and committee report) that 'Congress has expressed' thus-and-so" (citation omitted)). Because reliance on the Senate Report here is "illegitimate and ill advised," *id*. at 511, I do not join footnote 7.

EATON, Judge, dissenting:

The Freedom of Information Act ("FOIA") provides that a party is eligible to receive attorney fees if it has "substantially prevailed" in its lawsuit. 5 U.S.C. § 552(a)(4)(E)(i).

In 2007, Congress passed the OPEN Government Act, which, for the first time, provided for two categories of prevailing parties: (1) where the relief sought resulted from a judicial order or consent decree and (2) where a voluntary change in position afforded the plaintiff relief. *See* OPEN Government Act of 2007, Pub. L. No. 110-175, § 4, 121 Stat. 2524, 2525 (the "2007 Amendments"); *see also* 5 U.S.C. § 552(a)(4)(E)(ii).

Both categories existed in law before the 2007 Amendments, but Congress found that explicitly providing for the second category (voluntary change in position) would facilitate its purpose of overruling the holding in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001). *Buckhannon* held that, to be a prevailing party, a plaintiff needed more than a voluntary change in position. In addition, the plaintiff needed a court-ordered judgment on the merits or a consent decree.[1] *See* 532 U.S. at 604–05. *Buckhannon* was decided in the context of the Fair Housing

---

[1] *Davy v. CIA*, decided by the D.C. Circuit Court of Appeals prior to the 2007 Amendments, and applying the *Buckhannon* standard, is in accord. *See* 456 F.3d 162, 166 (D.C. Cir. 2006). There, the parties entered a joint stipulation, which the Court found to be effectually a negotiated settlement enforced by consent decree. *See id.* ("The order here is functionally a settlement agreement enforced through a consent decree."). Here, the order scheduling disclosure did not result from Poulsen's lawsuit, but from the President's declassification.

Amendments Act and the Americans with Disabilities Act. *See id.* at 601. A number of circuits, however, adopted the *Buckhannon* rule in the FOIA context. Thereafter, Congress enacted the 2007 Amendments to overrule *Buckhannon*, and thus make eligible for attorney fees a plaintiff who could show that it had obtained relief by a party voluntarily changing its position as a result of the litigation, but which had obtained neither a court order nor a consent decree. *See* 5 U.S.C. § 552(a)(4)(E)(ii)(II); *see also, e.g.*, *Davis v. DOJ*, 610 F.3d 750, 752 (D.C. Cir. 2010).

Prior to *Buckhannon*, to be a prevailing party under any set of facts, a FOIA plaintiff's lawsuit must have been a "substantial cause" for obtaining relief in order for there to be eligibility for attorney fees. *See Davis*, 610 F.3d at 752. *Buckhannon* added the requirement of a judgment or court order for eligibility for attorney fees but did not eliminate the substantial cause requirement. *See Buckhannon*, 532 U.S. at 618 (Scalia, J., concurring) (explaining that court-approved settlements and consent decrees, along with judicial determinations on the merits, were appropriate grounds for eligibility because "the outcome is at least the product of, and bears the sanction of, judicial action *in the lawsuit*. There is at least *some* basis for saying that the party favored by the settlement or decree prevailed *in the suit*.").**[2]**

---

**[2]** The majority relies on what it characterizes as the clear text of the statute to reach its conclusions. Prior to the 2007 Amendments the text read "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (2006) (amended 2007). Courts across the country found that for a plaintiff to be eligible for attorney fees, its lawsuit must somehow have caused the result. *See, e.g.*, *Davis*, 610 F.3d at 752; *Campaign for Responsible Transplantation v. Food & Drug*

The import of *Buckhannon* was that the plaintiff's lawsuit, having been a substantial cause of obtaining relief, was a necessary but not sufficient condition for eligibility for attorney fees. More was needed in the form of a court order or consent decree—*i.e.*, a merits determination in favor of the plaintiff. *See Buckhannon*, 532 U.S. at 604–05. The 2007 Amendments overruled the judicial imprimatur requirement in a case of a voluntary change of position but left in place the requirement that the plaintiff's lawsuit be a substantial cause of obtaining relief for attorney fee eligibility under either prong.

The 2007 Amendments thus returned the law to what several circuits, including this Circuit, had held it to be prior to *Buckhannon*. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524–25 (D.C. Cir. 2011) (emphasis added) ("[Pre-*Buckhannon*], a plaintiff 'substantially prevailed' not only when he obtained *an official disclosure order* from a court, but also when he substantially caused the government to release the requested documents before final judgment. . . . The purpose and effect of [the 2007 Amendments], which remains in effect today, *was to change the 'eligibility' prong back to its pre-*Buckhannon *form*."); *Davis*, 610 F.3d at 752; *see also, e.g.*, *Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983) (citation omitted) ("The plaintiff must show that: (1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information; and (2) the filing of the action had a *substantial causative*

---

*Admin.*, 511 F.3d 187, 193 (D.C. Cir. 2007) (quoting *Buckhannon*, 532 U.S. at 606). Nothing in the majority's opinion convinces me that a plain reading eliminates this requirement.

effect on the delivery of the information.") (stating the pre-*Buckhannon*, pre-2007 Amendments standard).

Here, Poulsen has only shown that the agency's change in position, due primarily to the President's declassification, was memorialized in an enforceable court order. He has not shown that his lawsuit was a substantial cause (or indeed any cause at all) of the relief he obtained. I would find that he is not eligible for attorney fees under either category provided for by the 2007 Amendments. I respectfully dissent.